IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
MICHAEL McCUNE,                    )
                                   )   2:10-cv-02011-GEB-GGH
          Plaintiff,               )
                                   )
     v.                            )   ORDER GRANTING PLAINTIFF'S
                                   )   PARTIAL MOTION FOR SUMMARY
628 HARVARD CAMERON, LLC;          )   JUDGMENT
WOODMAN VICTORY CAMERON, LLC;      )
FOUNTAIN VALLEY CAMERON, LLC;      )
COLBY BUTLER CAMERON, LLC;         )
BEVERLY HOWARD CAMERON, LLC,       )
                                   )
          Defendants.              )
_____   )
```

Plaintiff moves for summary judgment or partial summary judgment under Federal Rule of Civil Procedure ("Rule") 56 on his barriers to access claims concerning use of Defendants' parking lot. Plaintiff's claims are alleged under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51; and the California Disabled Persons Act ("DPA"), Cal. Civ. Code § 54. Defendants failed to respond to the motion, as required by Local Rule 230(c).

**I. LEGAL STANDARD**

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect

1

the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. To meet this burden, the movant must "inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

If the movant satisfies its initial burden, "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial." Id.; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). In evaluating the motion under Rule 56, evidence must be viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Bank of N.Y. v. Fremont Gen. Corp., 523 F.3d 902, 909 (9th Cir. 2008).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

2

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006). However, a nonmovant's failure to oppose the motion for summary judgment does not "excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." Martinez v. Sanford, 323 F.3d 1178, 1182 (9th Cir. 2003). Rather, summary judgment may only be granted if the movant has "me[t] its burden of demonstrating the absence of triable issues," even when the nonmovant fails to oppose the motion. Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995).

## II. UNCONTROVERTED FACTS

Plaintiff filed a Statement of Undisputed Facts ("SUF") and Requests for Admission ("RFA") in support of his motion. (Decl. of Khushpreet R. Mehton ("Mehton Decl") & Ex. A.)

The uncontroverted summary judgment evidentiary record establishes the following. Plaintiff is a C5-C6 quadriplegic who requires the use of an electric wheelchair when traveling in public. (SUF ¶ 2; Decl. of Michael McCune ("McCune Decl.") ¶ 2.) He lives near the Cameron Park Place Shopping Center, which contains a parking lot for a business complex. (Id. ¶ 3.) The business complex includes a Round Table Pizza restaurant and Safeway grocery store, located respectively at 3370 and 3380 Coach Lane, in Cameron Park, California. (McCune Decl. ¶ 3.) "Defendants own . . . the parking lot [that] services" the business complex. (SUF ¶ 4; Defs.' Answer ("Answer"), ECF No. 15, ¶ 5.) The business complex and parking lot are public accommodations that are "open to the public" and "intended for nonresidential use." (SUF ¶¶ 5-

6; Answer ¶ 7; Mehton Decl. ¶ 4(c)-(d) & Ex. A.) They were constructed in 1999. (Decl. of Joe Card ("Card Decl.") ¶ 2 & Ex. A.) Plaintiff visited the business complex on May 10, 2010; June 21, 2010; July 28, 2010; July 30, 2010; and August 2, 2010. (McCune Decl. ¶ 4.) He regularly patronizes the business complex and intends to return there. (Id. ¶¶ 4, 9.)

Since Plaintiff uses an electric wheelchair, he has "to travel in a van that deploys a ramp at the side of the van for unloading and loading [his] wheelchair," and he has "to use the disabled parking spaces and adjoining access aisles" to park and deploy the ramp. (Id. ¶¶ 4-5.) Plaintiff declares: "When the slopes and/or cross slopes [in disabled parking spaces and adjacent access aisles] are too steep, it makes them very difficult for me to traverse in my wheel chair because the front casters of my chair can veer or the chair can abruptly shift as I approach my van or as I transfer to and from my vehicle[.] Also, because I am a quadriplegic, excessive sloops are problematic because they disrupt my trunk balance in the wheelchair." (McCune Decl. ¶ 8(a), (b).) Plaintiff's expert, Joe Card, found that "[t]he slopes of the disabled parking spaces in the parking lot are 2.4%, 2.4%, 2.5%, 2.4%, 4.7%, 2.6%, 2.9%, 2.6%, 2.5%, 2.5%, and 2.3%," and "[t]he slopes of the access aisle adjacent to the disabled parking spaces in the parking lot are 2.7%, 2.4%, 2.8%, 3.5 %, 2.6%, and 2.5%." (Card Decl. ¶ 5(a), (b) & Ex. A, at 4-15, 37-41; see also Mehton Decl. ¶ 4(g), (h) & Ex. A.) Defendants admit that removal of the excessive slopes and cross slopes in their parking lot is readily achievable. (Mehton Decl. ¶ 4(e) & Ex. A.)

/
/

4

## III. DISCUSSION

### A. Americans with Disabilities Act of 1990

Plaintiff argues Defendants violated Title III of the ADA by "discriminat[ing] against [him] on the basis of disability by their failure to provide him with the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of [their] place of public accommodation." Mot. 3:7-12:8 (quoting 42 U.S.C. § 12182(a)). To prevail on this Title III discrimination claim, Plaintiff "must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant[s are] private entit[ies] that own[], lease[], or operate[] a place of public accommodation; and (3) [he] was denied public accommodations by the defendant[s] because of his disability." Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc., 603 F.3d 666, 670 (9th Cir. 2010) (citing Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007)).

The meaning of "disability" under the ADA includes "a physical . . . impairment that substantially limits one or more major life activities of such individual," such as "walking." § 12102(1), (2). Since Plaintiff is a C5-C6 quadriplegic who requires the use of an electric wheelchair when traveling in public, he is disabled within the meaning of the ADA. Further, Plaintiff has shown that the parking lot is a public accommodation under the ADA.

Plaintiff argues that Defendants denied him public accommodation in the parking lot because of his disability since Defendants failed to abide by the Department of Justice's regulations implementing the ADA's public accommodation provisions and the corresponding ADA Accessibility Guidelines ("ADAAG") concerning permissible slopes. Plaintiff further argues: "In the context of

5

existing facilities, discrimination includes the failure to make a facility readily accessible to, or useable by, the disabled." (Mot. 3:24-26 (citing 42 U.S.C. §§ 12182(b)(2)(A)(iv), 12188(a)(2).)

Title III of the ADA prohibits discrimination on the basis of disability and requires public accommodations to be accessible to persons with disabilities. 42 U.S.C. §§ 12181-89. "To flesh out the details of this general rule, Congress charged the Attorney General with the task of promulgating regulations clarifying how public accommodations must meet these statutory obligations." United States v. AMC Entm't, Inc., 549 F.3d 760, 763 (9th Cir. 2008). "Congress [also] directed the Department of Justice to issue regulations that provide substantive standards applicable to facilities covered under Title III." Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc., 339 F.3d 1126, 1129 (9th Cir. 2003).

"In January 1991, the Access Board proposed accessibility guidelines and provided a notice and comment period to evaluate them. Later that year, the Access Board issued its final ADA Accessibility Guidelines ["ADAAG"]. The Attorney General adopted these guidelines. . . ." AMC Entm't, Inc., 549 F.3d at 763 (internal citations omitted). The Department of Justice then "'adopt[ed] the ADAAG as the accessibility standard'" under the statute ("the 1991 ADAAG standards"). Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1025 (9th Cir. 2008) (quoting 56 Fed. Reg. at 35,585) (alteration in original). "On September 15, 2010, the Department of Justice promulgated new regulations and adopted new ADAAG standards ('the 2010 ADAAG standards')." Kohler v. Flava Enters., Inc., 826 F. Supp. 2d 1221, 1229 (S.D. Cal. 2011). The 2010 ADAAG standards are at issue here. 28 C.F.R. § 36.406(a) app.

Generally, "if a barrier violating [the ADAAG] relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA" if removal of the barrier is readily achievable. Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 947 (9th Cir. 2011) (en banc).

The 2010 ADAAG standards provide:

> 502.4 Floor or Ground Surfaces. Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted.
>
> EXCEPTION: Slopes not steeper than 1:48 [2.08%] shall be permitted.
>
> Advisory 502.4 Floor or Ground Surfaces. Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48.

ADAAG § 502.4 & Advisory (2010); see also McCune v. Singh, No. 2:10-CV-02207 JAM-GGH, 2012 WL 2959436, at *4 (E.D. Cal. July 19, 2012) (finding ADA violations for "disabled parking spaces . . . [that] had slopes and cross slopes exceeding 2.0% in violation of [the] ADAAG"); Hubbard v. Twin Oaks Health & Rehab. Ctr., 408 F. Supp. 2d 923, 931 (E.D. Cal. 2004) (finding ADAAG violations where "[t]he slope of the accessible parking spaces and the loading aisle were measured" at greater than "2% in any direction"). Since the slopes and cross slopes at issue exceed 2.08% in the business complex parking lot, if remediation of the excessive slopes is "readily achievable," then Plaintiff prevails on his Title III discrimination claim.

Section 12182(b)(2)(A)(iv) prescribes "failure to remove architectural barriers . . . in existing facilities . . . where such

removal is readily achievable." Under the statute, "existing facility" means "a facility in existence" and includes "newly constructed or altered facilities" such as the business complex and parking lot. 28 C.F.R. § 36.104; 28 C.F.R. pt. 36, app. A. "'Readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Here, Defendants concede that removal of the excessive slopes and cross slopes is readily achievable. (Mehton Decl. ¶ 4(e) & Ex. A.) Therefore, the portion of Plaintiff's motion seeking an injunction requiring remediation of the slopes is granted.

### B. Unruh Act & DPA

Plaintiff also argues that he is entitled to prevail on the portion of his summary judgment motion in which he seeks statutory minimum damages for violations of the Unruh Act and the DPA. "The Unruh Act and the DPA entitle disabled individuals to full and equal access to public accommodations." Cals. for Disability Rights v. Mervyn's LLC, 165 Cal. App. 4th 571, 585 (2008). Both laws provide that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of" the Unruh Act, Cal. Civ. Code § 51(f), or the DPA. Id. § 54(c).

Under the Unruh Act, Plaintiff can "recover the independent statutory damages of $4,000" irrespective of the actual damages he sustained. Molski, 481 F.3d at 731. Under the DPA, Plaintiff can recover statutory damages of "no . . . less than one thousand dollars ($1,000)." Cal. Civ. Code § 54.3(a). Statutory damages under both laws are available for each "offense," i.e., visit, wherein Plaintiff suffered discrimination. See Cal. Civ. Code §§ 52(a), 54.3(a); Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 847–49 (9th Cir. 2004). However, Plaintiff may not recover under both laws "for the same act or

failure to act," Cal. Civ. Code § 54.3(c); Plaintiff states in his motion that he elects to recover under the Unruh Act. (Mot. 12:1-13:6.) Therefore, since Plaintiff visited the business complex five times and encountered ADA violations each time, he has proved he is entitled to $20,000 in damages under the Unruh Act.

### IV. CONCLUSION

For the stated reasons, Plaintiff's partial summary judgment motion on his ADA claim concerning slopes in the parking lot is granted, and his summary judgment motion on his Unruh Act and DPA claims is granted; Plaintiff is awarded $20,000 in statutory damages on his Unruh Act claim; and an injunction issues requiring Defendants to bring the parking lot's parking access aisles into compliance with the ADAAG requirements for permissible slopes and cross slopes.

Dated: November 29, 2012

GARLAND E. BURRELL, JR.
Senior United States District Judge